O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILARY ANN S., | Case No. 5:25-cv-00113-KES |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| FRANK BISIGNANO, | AND ORDER |
| Commissioner of Social Security, | |
| Defendant.[1] | |

## I.

## INTRODUCTION

On January 15, 2025, Plaintiff Hilary Ann S. ("Plaintiff") filed a Complaint for review of denial of social security disability benefits. (Dkt. 1.) Plaintiff filed a Plaintiff's Brief under Rule 6 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g). ("PB" at Dkt. 12.) Defendant filed a responding Commissioner's Brief under Rule 7. ("CB" at Dkt. 14.) Plaintiff filed a Reply

---

[1] Frank Bisignano became Commissioner of Social Security on May 7, 2025. Under Federal Rule of Civil Procedure 25(d), he is automatically substituted as Defendant in this suit. The Clerk is directed to update the electronic docket accordingly.

1

Brief. ("PRB" at Dkt. 15.) For the reasons stated below, the Commissioner's decision denying benefits is AFFIRMED.

## II.
## BACKGROUND

Plaintiff was born in September 1983. Administrative Record ("AR") 454. After graduating from high school, she did parttime data entry/telemarketing for a mortgage business from January 2000 to October 2010. AR 67, 292. Due to mental illness, she initially filed for Social Security Disability Insurance Benefits ("DIB") and was awarded with an entitlement date of July 2008. AR 99, 441. In April 2016, she was again found disabled. AR 25, 105.

The Social Security Administration ("SSA") later conducted a review and notified Plaintiff that her benefits ceased as of October 1, 2019, due to medical improvement. AR 110-13, 441. In October 2019, Plaintiff had full custody of her five-month-old daughter. AR 643, 718-19, 805. She lived with and cared for her daughter without assistance. AR 63, 69. By October 2020, Plaintiff returned to work as a loan processor. AR 53. After she was laid off in April 2021, she worked a second job from July 2021 until November 2021. AR 55. She was laid off because there was "not enough work" to hit her goals. AR 55. She worked a third loan processing job from January to March 2022 making $8,000/month. AR 57. She was laid off again because "there just wasn't enough business coming in." AR 56-7. In February 2024, she testified that she would still be doing that job had she not been laid off. AR 72. These positions were remote, allowing her to work from home while providing childcare. AR 56.

Plaintiff, acting through counsel, challenged the determination that her disability had ended in October 2019. On February 16, 2024, the ALJ conducted a telephonic hearing at which a vocational expert ("VE") and Plaintiff testified. AR 47-80. On April 4, 2024, the ALJ published an unfavorable opinion. AR 20-46. The ALJ found that Plaintiff suffered from the severe, medically determinable

impairments ("MDIs") of "bipolar disorder, generalized anxiety disorder, borderline personality disorder, substance use disorder, obesity, and post-partum depression." AR 25. The ALJ determined that without substance abuse, Plaintiff's mental impairments were severe, but not so severe as to satisfy a medical listing. AR 27-28. The ALJ further determined that if Plaintiff stopped abusing substances, she would have the residual functional capacity ("RFC") to perform work at all exertional levels with the following non-exertional limitations:

> [Plaintiff] can understand, remember, and carryout simple routine tasks for up to two-hour periods of time with only occasional interaction with the general public; no fast-paced production or assembly line type work (fast-paced work is defined as work requiring more than frequent use of the hands); and only minimal changes in the workplace setting or routine.

AR 31.

Based on these RFC findings, the VE's testimony, and other evidence, the ALJ concluded that if Plaintiff were not abusing substances, Plaintiff could work as a counter supply worker, hospital cleaner, and store laborer. AR 38. The ALJ concluded that Plaintiff was not disabled as of October 2019. AR 39.

## III.
## ISSUE PRESENTED

<u>Issue One</u>: Whether the ALJ erred in evaluating the August 2023 medical opinions of Celina Marciano, LMFT, Psy.D.[2] (PB at 8.)

---

[2] Judge Scott instructs plaintiffs appealing the denial of social security disability benefits to include in their brief "a section labeled 'Issues Presented' that enumerates each claimed error by the Administrative Law Judge." See https://www.cacd.uscourts.gov/honorable-karen-e-scott, ¶ 27. Plaintiff did not do so, and her first argument heading (i.e., that the ALJ failed to evaluate "medical opinions in the record" properly (PB at 7)), is too broad to identify adequately a particular error by the ALJ. The Court construes Plaintiff's brief as challenging the ALJ's decision to give "little weight" to the August 2023 opinions of Dr. Marciano,

3

Issue Two: Whether the ALJ erred by failing to articulate clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. (PB at 13.)

## IV.

## DISCUSSION

**A.    ISSUE ONE: Dr. Marciano.**

**1. Relevant Law.**

In January 2017, the Social Security Administration ("SSA") issued revised regulations for evaluating medical opinions for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416). The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 404.1520c(b)(2). Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(a)-(b).

Recently, the Ninth Circuit provided the following guidance regarding treatment of physicians' opinions under the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. See 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources.").
> Our requirement that ALJs provide "specific and legitimate reasons"

---

because that is what Plaintiff's brief mainly discusses. (PB at 8-12.)

|   |   |
|---|---|
| 1 | for rejecting a treating or examining doctor's opinion, which stems |
| 2 | from the special weight given to such opinions, see Murray [v. |
| 3 | Heckler], 722 F.2d [499,] 501-02 [(9th Cir. 1983)], is likewise |
| 4 | incompatible with the revised regulations.  Insisting that ALJs provide |
| 5 | a more robust explanation when discrediting evidence from certain |
| 6 | sources necessarily favors the evidence from those sources—contrary |
| 7 | to the revised regulations. |

Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022).  Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence."  Id. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings."  Id. at 792 (citing 20 C.F.R. § 404.1520c(b)); see also 20 C.F.R. § 416.920c(b).  "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'"  Id. at 791-92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'"  Id. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

**2. Summary of Dr. Marciano's August 2023 Opinions.**

On August 29, 2023, Dr. Marciano wrote a "psychological evaluation" of Plaintiff.  AR 685-90.  She also completed a mental impairment questionnaire form.  AR 691-95.  In her evaluation, Dr. Marciano indicated that she had reviewed Plaintiff's outpatient mental health treatment records, including those from Inland Psychiatric Medical Group.  AR 685.  Dr. Marciano listed the conditions with which Plaintiff had been diagnosed, provided a general explanation of those conditions, and summarized the symptoms that Plaintiff reported.  AR 686-89.  She

1   then assessed that Plaintiff had "severe cognitive impairment."  AR 690.  Dr.
2   Marciano concluded that Plaintiff's psychological symptoms caused her "to
3   experience marked restriction of daily life activities along with marked difficulties
4   in maintaining focus and concentration."  AR 690.  In the questionnaire, Dr.
5   Marciano indicated that Plaintiff had "marked" or "moderate-to-marked"
6   limitations in thirteen areas of mental functioning, including understanding and
7   remembering detailed instructions, carrying out detailed instructions, and sustaining
8   an ordinary routine without supervision.  AR 694.  She opined that Plaintiff had
9   "moderate" limitations in performing even simple mental tasks, such as
10  understanding, remembering, and carrying out "one-to-two step instructions,"
11  asking "simple questions," making "simple decisions," and taking precautions
12  against hazards.  AR 694.
13       In the context of social security regulations addressing mental illness, an
14  "extreme" limitation means an inability to function independently, appropriately, or
15  effectively, and on a sustained basis.  A "marked" limitation means the ability to
16  function independently, appropriately, or effectively, and on a sustained basis is
17  seriously limited.  A "moderate" limitation means the ability to function
18  independently, appropriately, or effectively, and on a sustained basis is "fair."  20
19  C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F2.
20       At the February 2024 hearing, the ALJ asked Plaintiff, "Who is Dr. Celina
21  Marciano?"  AR 77.  Plaintiff responded, "She is a clinical psychiatrist that Omar
22  Ortega Disability Group, my attorney, referred to me to do a psychological
23  evaluation."  AR 77.  When asked how often she had seen Dr. Marciano, Plaintiff
24  explained, "Oh, I just did an evaluation with her over the phone last year.  So I
25  think once or twice I've spoken to her."  AR 77.
26  **3. Relevant Administrative Proceedings.**
27       The ALJ summarized the August 2023 medical opinions of Dr. Marciano,
28  assigning them "little weight."  AR 36.  The ALJ found that Dr. Marciano failed to

support her opinions with "references to medically acceptable objective clinical or diagnostic findings." Id.  The ALJ also found Dr. Marciano's opinions "inconsistent with evidence from other medical and nonmedical sources." AR 36.

**4. Analysis of Claimed Error.**

First, Plaintiff argues that Dr. Marciano adequately supported her findings by reviewing Plaintiff's medical records and conducting a "full examination." (PB at 8.)  But Dr. Marciano's report does not explain how any facts learned from Plaintiff's medical records or during her telephonic examination supported her findings.  When asked to identify the clinical findings that supported her assessments, Dr. Marciano wrote "N/A."  AR 693.

Next, Plaintiff argues that the ALJ cherry-picked the medical evidence by citing "normal mental status examinations" ("MSEs") as inconsistent with Dr. Marciano's opinions. (PB at 10-11, citing AR 36, which cites AR 651, 652, 655, 716).  The MSE evidence cited by the ALJ is as follows:

- AR 651-52: This October 2019 psychiatric evaluation by Inland Psychiatric Medical Group notes that Plaintiff was diagnosed with bipolar disorder by age 13, but she had been taking Risperdal "on and off since 2015, this time since Aug. 2019 with good result."  AR 651.  She was "feeling better" with a "more stable mood" and "better concentration."  AR 651.  She was a "stay at home mom" who was caring fulltime for her five-month-old daughter and fighting to get 50/50 custody of her three-year-old son.  AR 651-52.  Her cognition was "within normal limits."  AR 652.

- AR 655: This November 2019 psychiatric evaluation by Inland Psychiatric Medical Group notes that Plaintiff's mental status was "unremarkable" with "normal" cognition and judgment.  AR 656.

- AR 715-16: This January 2021 psychiatric evaluation by Inland Psychiatric Medical Group notes that Plaintiff was "compliant" with her medication.  AR 715.  She had "good" concentration.  AR 715.  She had "intact" memory, "average"

intellectual functioning, and "adequate" insight and judgment. AR 715-16.

The evidence cited by the ALJ spans multiple years from 2019 to 2021. It is inconsistent with Dr. Marciano's opinions. Compare AR 694 ("marked" limitation maintaining concentration) with AR 715 ("good" concentration); AR 692 ("poor memory") and AR 694 ("moderate" difficulty remembering even simple instructions) with AR 715 ("intact" memory); AR 689 ("marked restriction of daily life activity") with AR 651-52 (caring independently for her five-month-old daughter); AR 690 ("severe" cognitive impairment) with AR 652 and 656 ("normal" cognition). The ALJ's finding of inconsistency is supported by substantial evidence.

Finally, Plaintiff argues that the ALJ failed to show how Dr. Marciano's opinions were inconsistent with Plaintiff's activities. (PB at 12.) But the ALJ noted that Plaintiff took care of her young daughter, "drove, dressed her daughter, drove her daughter to school, cleaned, looked for work, attended family events, and cared for [her] daughter after school." AR 33. Indeed, Plaintiff testified that she regularly drove between Beaumont and Yorba Linda to visit family. AR 68. She took her daughter to and from school every day and even volunteered at her daughter's school. AR 68, 72.

These activities are inconsistent with the extreme mental limitations posited by Dr. Marciano. Someone with moderate difficulty understanding simple instructions, making simple decisions, sustaining a routine without supervision, and taking precautions against everyday hazards (AR 694) is not someone who could maintain a household, care for a young child independently, do parttime work as a loan processor, and regularly drive long distances unsupervised to visit family. Again, the ALJ's finding of inconsistency is supported by substantial evidence.

**B.     ISSUE TWO: Plaintiff's Subjective Symptom Testimony.**

   **1. Relevant Law.**

The ALJ engages in a two-step analysis to evaluate a claimant's subjective

8

1  symptom testimony. Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir.
2  2007). "First, the ALJ must determine whether the claimant has presented
3  objective medical evidence of an underlying impairment [that] could reasonably be
4  expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the
5  ALJ may not reject a claimant's testimony "simply because there is no showing that
6  the impairment can reasonably produce the degree of symptom alleged." Smolen v.
7  Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

8      Second, if the claimant meets the first test, the ALJ may discredit the
9  claimant's subjective symptom testimony only by making specific findings that
10 support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010);
11 Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). Unless an ALJ finds that a
12 claimant is malingering or has failed to provide objective medical evidence in
13 support of his or her testimony, an ALJ must provide clear and convincing reasons
14 for rejecting a claimant's subjective testimony about the severity of experienced
15 symptoms. Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). While
16 an ALJ's findings must be properly supported and sufficiently specific to assure a
17 reviewing court that the ALJ did not "arbitrarily discredit" a claimant's subjective
18 statements, an ALJ is not "required to believe every allegation" of disability. Fair
19 v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).

20     **2. Relevant Administrative Proceedings.**
21       a. The ALJ's Discussion of Plaintiff's Testimony.
22     The ALJ summarized Plaintiff's testimony. AR 32. Plaintiff testified that
23 she was unable to work due to "anxiety attacks, sometimes on a daily basis or every
24 other day." AR 58. After she stopped working, she only had anxiety attacks twice
25 a week. AR 60-61. She found it "really hard … to stay focused and to keep on task
26 for each task that a job expects you to do … for an eight-hour day." AR 58. She
27 found working "very stressful," and she was "not able to deal with the stress of,
28 pretty much, the world." AR 58. She admitted, however, that "normally [she]

9

could stay on task fine." AR 60. Difficulties arose, however, "when there's more high stress and more demands," such as with her jobs in the mortgage industry "because there's so much going on." AR 60. She could not work because "there is pressure at work and when [she felt] pressure, [her] mind shut down …." AR 310.

The ALJ found that Plaintiff's MDIs "could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 32. As reasons for discounting Plaintiff's subjective symptom testimony, the ALJ noted (1) inconsistency with the objective evidence; (2) inconsistency with Plaintiff's daily activities, (3) inconsistent symptom reporting, and (4) inconsistent statements. AR 32-34.

### 3. Analysis of Claimed Error.

a.  <u>Reason One</u>:  Inconsistency with Objective Evidence.

The ALJ found that Plaintiff's statements about the "intensity, persistence, and limiting effects of [her] mental health symptoms are inconsistent with the objective medical evidence without the substance use disorders." AR 32. The ALJ noted Plaintiff's testimony that mental health symptoms, such as anxiety and difficulty concentrating, prevented her from working. AR 32, referring to AR 55. The ALJ cited the same October and November MSEs by Inland Psychiatric Medical Group as evidence that Plaintiff, when she abstained from drug and alcohol use and took mental health medication as prescribed, had "normal appearance, eye contact, activity, attitude, mood, affect, thought process, perception, thought content, cognition, intelligence, insight, and judgment." AR 32, citing AR 652.

Plaintiff contends that her "impairments interfere with her sleep, memory, self-care, ability to concentrate on tasks, ability to get along with others, ability to accept instruction from authority." (PB at 14, citing AR 358, 359, 363, 364.) Similarly, symptoms from her anxiety "impair[] her ability to meet deadlines and

10

goals in work environments." (Id.)  She suffers from panic attacks daily, which impact her ability to focus at a job. (Id.)  She has fewer attacks when she is not working. (Id.)  According to Plaintiff, the ALJ erred in failing to account for how these symptoms impact Plaintiff's ability to work. (Id. at 19.)  She was laid off from previous employment because these symptoms affected her ability to meet the necessary goals and deadlines (id.), although she also testified that she was laid off because there was "not enough work …" (AR 55).

        The ALJ's discounting of Plaintiff's subjective symptom testimony because it was inconsistent with the objective medical evidence was a clear and convincing reason supported by substantial evidence.  See Carmickle v. Commissioner, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").  As discussed above, the ALJ adequately identified the lack of support for Plaintiff's alleged symptoms from Plaintiff's medical records.  The ALJ acknowledged Plaintiff's testimony that her mental health symptoms prevented her from working and handling stressful situations.  AR 32, referring to AR 55.  "The question facing the ALJ, however, was how severe these symptoms were and how they impacted [Plaintiff's] ability to work *during the period of alleged disability*."  Michael Don J. v. O'Malley, 23-cv-00418, 2024 WL 4487020, at *10 (D. Idaho Aug. 12, 2024) (emphasis in original) (citing Thorne v. Schweiker, 694 F.2d 170, 171 (8th Cir. 1982) and Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  Here, it was reasonable for the ALJ to conclude that Plaintiff was functioning better than she had claimed after October 2019 and that she was capable of work at all exertional levels with numerous non-exertional limitations aimed at reducing normal workplace stressors.  See AR 31.

        b.    Reason Two: Inconsistency with Daily Activities.

        The ALJ found that Plaintiff's "daily activities are inconsistent with [her] statements about the intensity and persistence of symptoms."  AR 33.  The ALJ

11

provided the following supporting evidence:

> [Plaintiff] testified that she took care of her 4-year-old daughter (Hearing Recording: 10:00:59 [AR 63]). [She] also testified that she drove, dressed her daughter, drove her daughter to school, cleaned, looked for work, attended family events, and cared for daughter after school (Hearing Recording: 10:08:32 [AR 69]). In fact, Plaintiff testified that if she were not laid off from a loan processing job, she would still be working there. [AR 72.] Although the undersigned did not find [Plaintiff's] work activity as a mortgage loan processor or data entry clerk to be substantial gainful activity, [Plaintiff] engaged in work activity (at times for 40 hours per week) in 2020, 2021, and 2022 (Exhibits 12D; 13D; 21F, page 52; 23F [AR 267, 268-88, 747, 852-53]). In fact, the claimant's activities of daily living were within "normal limits" (Exhibit 12F, page 3 [AR 644]).

AR 33. Per her Function Report, Plaintiff could cook Korean food, pay bills, walk outside alone, drive sixty miles, and use the Internet. AR 68, 312-14.

Plaintiff argues that her activities do not" translate to a functional ability to perform work activities." (PB at 19.) But the relevant question is whether her activities are inconsistent with her testimony about the limiting effects of her MDIs. While Plaintiff testified that she could not work because she could not deal with stress, stick to a routine, or stay focused (AR 55, 58), her activities demonstrated that she could deal with some degree of stress (i.e., managing a household and raising a young daughter), stick to a daily routine (i.e., taking her daughter to school each morning and picking her up), and stay focused for more than short periods of time (i.e., driving long distances and working from home as a loan processor). Again, the ALJ's finding of inconsistency is supported by substantial evidence.

      c.    <u>Reason Three</u>: Inconsistent Symptom Reporting.

The ALJ found that Plaintiff's "statements regarding the alleged intensity, persistence, and limiting effects of symptoms conflict with other evidence about the duration and frequency of symptoms." AR 33. The ALJ contrasted her testimony with numerous examples of improvement. AR 33, citing AR 655 (November 2019 report finding that Plaintiff's mental condition improved when she was compliant with medications), AR 581 (February 2019 report noting that Plaintiff was "doing well"), AR 701 (February 2020 report finding improvement in Plaintiff's mental symptoms), and AR 705 (April 2020 report finding that Plaintiff's symptoms improved while she was working from home).

Plaintiff argues that the fact that she "reported some improvement in her symptoms in 2019 does not translate to improvement to a sustained level of functioning …." (PB at 18.) But again, the question is whether Plaintiff told her doctors that she was doing better than she told the SSA. The ALJ's conclusion that Plaintiff reported milder symptoms to her doctors than to the SSA is supported by substantial evidence, i.e., the records cited in the ALJ's decision.

      d.    <u>Reason Four</u>: Inconsistent Statements.

The ALJ found that Plaintiff's "statements regarding the alleged intensity, persistence, and limiting effects of symptoms are inconsistent with other information in the case record." AR 34. As examples, the ALJ cited that Plaintiff "testified that she has not used or smoked marijuana since her early twenties," but "medical records document an assessment of cannabis use disorder" in August 2023, and "laboratory findings were positive for cannabinoids." AR 34, citing AR 785, 797, 808; <u>see also</u> AR 805 ("Marijuana and Methamphetamine use recent (last use July 2023"); AR 71 (testifying "I've never done meth" and "I smoked marijuana back with I was like a teenager in my 20s"). The ALJ also noted that in 2019, Plaintiff told her therapist, Christine McMahon, Psy.D., that she "left the corporate world preferring to work on her own because, in part, she liked making

13

her own hours." AR 34, citing AR 645.

Plaintiff argues that she testified that she quit working in 2020 and 2021 "due to a combination diminishing business and an inability to meet the demands of that work." (PB at 19, citing AR 55-56.)  She does not address or try to refute the ALJ's conclusion that she made inconsistent statements about drug use.  ALJs can rely on "inconsistent statements to [a claimant's] medical providers and in … testimony regarding … substance abuse" to discount the claimant's testimony. Ridgley v. Berryhill, 706 F. App'x 365, 366 (9th Cir. 2017) (citing Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002)).

## VI.
## CONCLUSION

Based on the foregoing, **IT IS ORDERED** that judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits.

DATED:  June 27, 2025

_____
KAREN E. SCOTT
United States Magistrate Judge